**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **ESTER SANCHES-NAEK, ET AL.,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 3:16-CV-01843-VAB** |
| **TAP PORTUGAL,** | ) | |
| **Defendant.** | ) | **January 20, 2017** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT'S MOTION TO DISMISS</u>**

## I. INTRODUCTION

Defendant TAP Portugal ("TAP"), by its attorneys, submits this Memorandum of Law in support of its Motion to Dismiss the Complaint of Plaintiffs Ester Sanches-Naek, Rashid Hamid, and Abdul Naek Hamid ("Plaintiffs" or "Ms. Sanches-Naek," "Mr. Hamid," and "Mr. Naek Hamid") in its entirety with prejudice for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs claim that they were removed from an international flight during the boarding process and suffered emotional and economic injuries as a result of the actions of TAP employees. Even accepting the truth of these allegations for the

purpose of this Motion to Dismiss, Plaintiffs' claims must be dismissed as preempted by the Montreal Convention[1] and by the Airline Deregulation Act, 49 U.S.C. § 41713(b).

Because the conduct complained of took place in the course of international air carriage, Plaintiffs' claims are governed by an international treaty, the Montreal Convention. Where, as here, the Montreal Convention applies, passenger claims may be brought only subject to the terms of the Convention, or not at all. Because, as a matter of law, the Montreal Convention displaces Plaintiffs' common law and statutory-based claims, those claims must be dismissed. Further, because Plaintiffs do not and cannot successfully assert their claims under the terms of the Montreal Convention, Plaintiffs' Complaint must be dismissed in its entirety with prejudice.

In addition to preemption under the Montreal Convention, Plaintiffs' claims sounding in tort are also expressly preempted by the Airline Deregulation Act.

TAP therefore respectfully requests that this Court grant its Motion to Dismiss the Complaint in its entirety with prejudice.

## II. STATEMENT OF THE CASE

Plaintiffs Ester Sanches-Naek, her husband Rashid Hamid, and their minor son Abdul Naek Hamid had a roundtrip international flight reservation with TAP Portugal. Complaint, ¶ 4. Bookings for three seats in economy class were made by a travel agency, Key Tours International, Inc., Fairfax, Virginia. *Id.*, Ex. A. The outbound flight was TAP flight 208, departing on August 3, 2016, from John F. Kennedy International Airport ("JFK") to Lisbon, Portugal. *Id.*, ¶ 4.

---

[1] Convention for the Unification of Certain Rules for International Carriage by Air, S. Treaty Doc. No. 106-45, T.I.A.S. No. 13038, 1999 WL 33292734 (May 28, 1999) [hereinafter "Montreal Convention"].

At JFK, prior to boarding the outbound flight, Plaintiffs report that they were invited by TAP to its "VIP Lounge" where Ms. Sanches-Naek and Mr. Hamid were offered and served one complimentary wine beverage. *Id.*, ¶ 6. Plaintiffs aver that they did not drink any other alcoholic beverages prior to boarding the aircraft, and allegedly "none of them were intoxicated." *Id.*, ¶ 7.

Plaintiffs boarded the aircraft together; Ms. Sanches-Naek was seated in economy class, and Mr. Hamid and Mr. Naek Hamid were seated in first class. *Id.*, ¶ 8.[2] Plaintiffs claim that, after Ms. Sanches-Naek arrived at her seat, she "realized that she was still carrying Rashid and Abdul's boarding passes and passports." *Id.*, ¶ 9. Apparently believing that "they might need these documents immediately," Ms. Sanches-Naek walked up from economy class to the first class section of the aircraft allegedly "in order to give Rashid and Abdul their travel documents and to help them with placing their carry-on baggage in the overhead compartments." *Id.*

As she was walking to Mr. Hamid and Mr. Naek Hamid's seats, Ms. Sanches-Naek supposedly "overhead and observed" an unidentified "male TAP flight attendant rudely and loudly berating and screaming at" Mr. Hamid and Mr. Naek Hamid. *Id.*, ¶ 10. Plaintiffs claim that, when Ms. Sanches-Naek "attempted to ascertain why the male flight attendant was screaming at her elderly husband and minor child and before she could explain why she was in first class," the flight attendant began "screaming" at Ms. Sanches-Naek, ordered her to return to economy class, and called "Global Security." *Id.*, ¶ 10.

Upon arriving at the aircraft, the Global Security officer apparently advised Plaintiffs "to disembark from the airplane." *Id.*, ¶ 11. Plaintiffs claim that TAP then summoned the Port

[2] TAP has two classes of service on its transatlantic flights: executive class and economy class. Messrs. Hamid and Naek Hamid were seated in TAP's executive class, which Plaintiffs characterize as "Business Class, a/k/a "First Class" in the Complaint.

Authority Police Department ("PAPD"), and five police officers arrived at the terminal. *Id.*, ¶ 11. At this time, PAPD supposedly "determined that they had been misinformed" by TAP, and that "there was no legitimate reason for [TAP] to have summoned the police." *Id.*, ¶ 11. Plaintiffs state that they missed the Lisbon flight and "all of their subsequent connecting flights," "completely ruin[ing]" their planned vacation. *Id.*, ¶ 12.

In support of their claims against TAP, Plaintiffs aver that unidentified TAP representatives made statements to the Global Security officer, PAPD, and in front of other passengers that Plaintiffs were "highly intoxicated, aggressive, and posing a security threat," which Plaintiffs claim was "misinformation." *See, e.g.*, *id.*, ¶ 34. Plaintiffs request compensatory damages for "economic damages, mental anguish, emotional distress, humiliation and embarrassment" and "[s]tatutory punitive damages" for "all intentional and reckless conduct." *Id.*, Prayer for Relief.

## III. ARGUMENT

### A. Standards of Review Applicable to TAP's Motion to Dismiss

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff." *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007) (citation omitted); *see also Stefanoni v. Darien Little League, Inc.*, 101 F. Supp. 3d 160, 172 (D. Conn. 2015) (J. Bolden). Nevertheless, although "well-pleaded material allegations of the complaint are taken as admitted[,] . . . conclusions of law or unwarranted deductions of fact are not admitted." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994) (citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *See Twombly*, 550 U.S. at 570.

### B. Plaintiffs' Allegations Fail to State Claims upon Which Relief Can Be Granted Because Plaintiffs' Claims Are Preempted by the Montreal Convention

The Montreal Convention exclusively governs incidents, like the one Plaintiffs allege here, that occur in the course of international air travel.[3] While the Complaint totally ignores the Montreal Convention, Plaintiffs cannot ignore the legal fact that the Montreal Convention preempts all of their claims.

#### 1. The Warsaw and Montreal Conventions

The Warsaw Convention[4] "created a comprehensive liability system to serve as the exclusive mechanism for remedying injuries suffered in the course of the 'international transportation of persons, baggage, or goods performed by aircraft.'" *King v. Am. Airlines, Inc.*, 284 F.3d 352, 356-57 (2d Cir. 2002) (quoting Warsaw Conv., Art. 1). The system was designed to "protect air carriers against catastrophic, crippling liability by establishing monetary caps on awards and restricting the types of claims that may be brought against carriers, while accommodating the interests of injured passengers by creating a presumption of liability against

[3] Both the United States and Portugal are signatories to the Montreal Convention. For the convenience of the Court, a copy of the Montreal Convention and a list of the signatory nations are provided as exhibits to a declaration of counsel.

[4] Convention for the Unification of Certain Rules Relating to International Transportation by Air, 49 Stat. 3000 (Oct. 12, 1929) (*reprinted in* note following 49 U.S.C. § 40105) [hereinafter "Warsaw Convention"].

the carrier when a claim satisfies the substantive requirements of the Convention." *King*, 284 F.3d at 357 (citing *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 169-70 (1999)).

The Montreal Convention modernized and consolidated the Warsaw Convention and its amendments. Montreal Conv., Preamble. Many of the two treaties' provisions are similar, and the scope and purpose remain the same.[5] Like the Warsaw Convention, the Montreal Convention governs "all international carriage of persons . . . performed by aircraft for reward." Montreal Conv., Art. 1(1); *see Dogbe v. Delta Air Lines, Inc.*, 969 F. Supp. 2d 261, 271 (E.D.N.Y. 2013). The Montreal Convention continues to "provide[] the exclusive remedy for injuries or damage to individuals incurred on board international flights." *Hornsby v. Lufthansa German Airlines*, 593 F. Supp. 2d 1132, 1135 (C.D. Cal. 2009) (citations omitted); *see* Montreal Conv., Art. 29 ("In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention."). The uniform, comprehensive liability system created by the Warsaw Convention and maintained by the Montreal Convention requires "that passengers be denied access to the profusion of remedies that may exist under the laws of a particular country, so that they must bring their claims under the terms of the Convention or not at all." *King*, 284 F.3d at 357 (citing *Tseng*, 525 U.S. at 161).

[5] In interpreting the Montreal Convention, courts continue to rely on cases interpreting the Warsaw Convention because the Montreal Convention "still retains many of [the Warsaw Convention's] original provisions and terms." *Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190, 205 (E.D.N.Y. 2012) (citation omitted); *see Baah v. Virgin Atl. Airways Ltd.*, 473 F.Supp.2d 591, 596 (S.D.N.Y. 2007) ("[T]his Court has previously relied on cases interpreting a provision of the Warsaw Convention where the equivalent provision in the Montreal Convention was substantively the same.") (citation omitted); *Paradis v. Ghana Airways Ltd.*, 348 F.Supp.2d 106, 111 (S.D.N.Y. 2004) ("[T]he preemptive effect is identical regardless of whether the Montreal Convention or the Warsaw Convention … applies; thus the Court need not decide which Convention controls."), *aff'd*, 194 Fed. Appx. 5 (2d Cir. 2006).

Specifically, Article 17 of the Convention governs injury to passengers in the course of international air travel. Article 17(1) provides: “The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.” Montreal Conv., Art. 17(1). If the injury occurred on board the aircraft or in the course of any of the operations of embarking or disembarking, claims under federal or state law are preempted, even when the injury is not compensable under the Convention. *See Tseng*, 525 U.S. at 161 (“[R]ecovery for a personal injury suffered ‘on board [an] aircraft or in the course of any of the operations of embarking or disembarking,’ Art. 17, 49 Stat. 3018, if not allowed under the Convention, is not available at all.”); *King*, 284 F.3d at 360 (“[A] claim for an injury to a passenger is preempted by Article 17 as long as the harm was sustained ‘in the course of any of the operations of embarking’ on an aircraft.”); *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 370 (2d Cir. 2004) (“If a passenger’s injuries fall within the scope of Article 17, he is either entitled to recovery under the Convention or not at all.”); *Cush v. BWIA Int’l Airways Ltd.*, 175 F. Supp. 2d 483, 486-87 (E.D.N.Y. 2001) (The Convention “is the only means by which an individual injured on board an international flight may obtain relief.”).

Thus, when a passenger is injured in international air transportation, the passenger’s only recourse is the Montreal Convention – whether or not the injury is of a type that is compensable under the criteria of the Convention. Here, Plaintiffs’ claims of injury, not resulting in death or bodily injury, are not compensable. *See* Part III.B.3, *infra*.

**2. Preemption of Plaintiffs' Claims under the Montreal Convention**

Plaintiffs assert many causes of action against TAP. They allege violations of federal discrimination statutes, presumably under 42 U.S.C. §§ 1981, 1983.[6] Complaint, ¶¶ 38-40. Plaintiffs also allege claims grounded in state law, including intentional misrepresentation, negligence, libel, slander, malicious prosecution, discrimination, elder abuse, breach of contract, violation of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and negligent infliction of emotional distress. *Id.*, ¶¶ 13-63.

All of Plaintiffs' claims are preempted by the Montreal Convention. Therefore, Plaintiffs fail to state a claim upon which relief may be granted. *See Dogbe*, 969 F. Supp. 2d at 277 (granting defendants' Rule 12(b)(6) motion to dismiss plaintiff's federal discrimination and state common law and statutory tort and contract claims as preempted by the Montreal and Warsaw Conventions). Article 17 of the Montreal Convention governs injuries alleged to occur on board the aircraft and during embarkation and disembarkation of an international flight. *See* Montreal Conv., Art. 17(1). If the injury occurred on board the aircraft or during embarkation or disembarkation, the injured person "must bring their claims under the terms of the Convention or not at all." *King*, 284 F.3d at 357-59 (explaining that claims based on local law are preempted if they fall within the "substantive scope" of the treaty, "even if the claim is not actionable under the treaty," citing *Tseng*, 525 U.S. at 172). Here, it is undisputed that Plaintiffs' flight was an international one. *See* Complaint, ¶ 4., Exs. A, C. All of Plaintiffs' claims arise from an incident that occurred on board this international flight, during the boarding process, and are therefore preempted by the Montreal Convention.

---

[6] The Complaint cites to 28 U.S.C. §§ 1981 and 1983 for Plaintiffs' discrimination claims based on federal law. Complaint, ¶¶ 38–39. TAP assumes Plaintiffs meant 42 U.S.C. §§ 1981 and 1983.

Courts in the Second Circuit have consistently found claims like those asserted by the Plaintiffs to be preempted by the Warsaw or Montreal Convention. Discrimination claims under federal statutes, 42 U.S.C. §§ 1981 and 1983, and under state law are routinely held to be preempted. *See, e.g.*, *King*, 284 F.3d at 355-56, 360-61 (declining to "carve out an exception for civil rights actions as a matter of policy" and holding that "discrimination claims that arise in the course of embarking on an aircraft are preempted by Article 17 of the Warsaw Convention") ("Notably, every court that has addressed the issue of whether discrimination claims are preempted by the Warsaw Convention post-*Tseng* has reached a similar conclusion.") (citing cases); *Glassman-Blanco v. Delta Airlines, Inc.*, No. 13-cv-4287 (KAM)(SMG), 2016 WL 1171611, at *2 (E.D.N.Y. Mar. 25, 2016) (§ 1983 claim preempted) (adopting the Magistrate Judge's Report and Recommendation regarding plaintiff's § 1983 claim, *Glassman-Blanco v. Delta Airlines, Inc.*, No. 13-CV-4287 (KAM), 2016 WL 5017468 (E.D.N.Y. Feb. 3, 2016)); *Dogbe*, 969 F. Supp. 2d at 274-75 (§ 1983 claim preempted); *Kripalani v. AMR Corp.*, No. 12 Civ. 5609 (KBF), 2013 WL 1822777, at *3 (S.D.N.Y. Apr. 30, 2013) (§ 1981 claim preempted); *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 494-95 (S.D.N.Y. 2009) (discrimination claims based on federal and state law preempted).[7]

State common law and statutory claims, like those alleged by Plaintiffs, are also routinely found to be preempted by the Montreal Convention. *See, e.g.*, *Shah v. Pan Am. World Servs., Inc.*, 148 F.3d 84, 97-98 (2d Cir. 1998) (all common law claims, including for negligence and

---

[7] Plaintiffs also did not sufficiently plead §§ 1981 and 1983 claims. The "naked allegation" that Plaintiffs were discriminated against on the basis of their race, color, national origin, ancestry, gender, and religion is "too conclusory to survive a motion to dismiss." *See Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988). In addition, TAP was not a "state actor" under § 1983. *See Benavidez v. Gunnell*, 722 F.2d 615, 618 (10th Cir. 1983) ("The mere furnishing of information to police officers does not constitute joint action under color of state law which renders" a private actor liable under § 1983.).

breach of contract, preempted by the Warsaw Convention); *Fishman v. Delta Air Lines, Inc.*, 132 F.3d 138, 142 (2d Cir. 1998) (claims for negligent and intentional infliction of emotional distress preempted by Article 17 of the Warsaw Convention); *Ikekpeazu v. Air France*, No. 3:04 CV 00711(RNC), 2004 WL 2810063 (D. Conn. Dec. 6, 2004) (observing that "[the Warsaw Convention's] preemptive reach extends to state law claims for 'injuries to persons or baggage suffered in the course of international airline transportation, regardless of whether a claim actually could be maintained under the provisions of the Convention,'" citing *King*, 284 F.3d at 356, and finding plaintiff's claims for negligence, breach of contract, and negligent infliction of emotional distress preempted); *Dogbe*, 969 F. Supp. 2d at 264-66 (finding plaintiff's claims for breach of contract, negligence, and intentional infliction of emotional distress, which stemmed from plaintiff's removal from a flight for disruptive behavior, to be preempted); *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 301 (E.D.N.Y. 2013) (plaintiffs' state law claims for malicious prosecution, intentional infliction of emotional distress, and negligence preempted by Montreal Convention), *aff'd*, 578 Fed. Appx. 51 (2d Cir. 2014) (summary order); *Turturro v. Cont'l Airlines*, 128 F. Supp. 2d 170 (S.D.N.Y. 2001) (plaintiff's defamation and intentional infliction of emotional distress claims based on communications that pilot made to police preempted by Warsaw Convention).[8]

In sum, Plaintiffs' Complaint should be dismissed in its entirety with prejudice. Plaintiffs' claims are preempted by the Montreal Convention, and therefore Plaintiffs fail to state a claim upon which relief can be granted.

---

[8] *See also Brandt v. Am. Airlines*, No. C 98-2089 (SI), 2000 WL 288393, at *3-4 (N.D. Cal. Mar. 13, 2000) (claims for defamation, slander per se, negligent and intentional infliction of emotional distress, and breach of contract preempted); *Peralta v. Cont'l Airlines, Inc.*, No. C 98–1252 MJJ, 1999 WL 193393, at *2 (N.D. Cal. Mar. 30, 1999) (claims for breach of contract and breach of the implied covenant of good faith and fair dealing preempted by Warsaw Convention).

### 3. Plaintiffs Cannot State Viable Claims under the Montreal Convention

Plaintiffs' rights and remedies are limited to those cognizable in the Montreal Convention, regardless of whether Plaintiffs have viable claims under that Convention. Plaintiffs are not able to state viable claims under the Montreal Convention because their claims fall within the scope of Article 17 and their alleged damages do not result from "death or bodily injury." The Montreal Convention also does not permit recovery of punitive damages.

All of Plaintiffs' alleged injuries arise from an incident that occurred on board the aircraft, during embarkation. Plaintiffs' purported injuries therefore are governed by Article 17 of the Montreal Convention. *See King*, 284 F.3d at 59-60(declining to determine whether the plaintiffs stated a claim under a separate article of the Convention because the events at issue occurred during embarkation and therefore fell wholly within the scope of Article 17); *Kruger*, 976 F. Supp. 2d at 302-03 (holding that, because the alleged misconduct by the airline which led to one plaintiff's arrest and detention occurred near the boarding gate, all of the plaintiffs' claims stemming from that incident were preempted by Article 17).

To state a claim under Article 17, a passenger must establish that the passenger suffered "bodily injury" caused by an accident. Montreal Conv., Art. 17(1); *see Tseng*, 525 U.S. at 160-61 ("[A] passenger whose injury is not compensable under the Convention (because it entails no 'bodily injury' or was not the result of an 'accident') will have no recourse to an alternate remedy."); *King*, 284 F.3d at 359 ("Although by its terms Article 17 limits recovery to passengers who have sustained 'bodily injury,' the Supreme Court in *Tseng* made clear that this restriction on liability affects neither the analysis of the substantive scope nor its preemptive effect."); *Scala v. Am. Airlines*, 249 F. Supp. 2d 176, 178 (D. Conn. 2003) ("While Article 17 preempts a large swath of claims, a plaintiff may actually recover damages for claims within

Article 17's preemptive scope if: (1) an accident occurred, in which (2) a passenger suffered death, wounding, or any other bodily injury, and (3) the accident occurred either on board the aircraft or in the course of embarking or disembarking from the plane."); *Ikekpeazu*, 2004 WL 2810063, at *1 ("Plaintiff's allegations do not state a claim for relief under [Article 17] because he does not allege bodily injury.").

A "bodily injury" is a "physical injury" or "physical manifestation of injury." *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 534, 552 (1991) ("[A]n air carrier cannot be held liable under Article 17 when an accident has not caused a passenger to suffer death, physical injury, or physical manifestation of injury."); *see Ehrlich*, 360 F.3d at 385 (Article 17 "permits passengers to hold a carrier liable for a mental injury only to the extent that it was caused by a physical injury"). Plaintiffs allege no physical injury. *See* Complaint, Prayer for Relief (claiming compensatory damages for "economic damages, mental anguish, emotional distress, humiliation and embarrassment"). Therefore, Plaintiffs are unable to state a valid claim under the Montreal Convention.

Further, the Montreal Convention expressly does not permit recovery of "punitive, exemplary or any other non-compensatory damages." Montreal Conv., Art. 29; *see Glassman-Blanco*, 2016 WL 5017468, at *3; *Chendrimada v. Air-India*, 802 F. Supp. 1089, 1090 (S.D.N.Y. 1992). Thus, Plaintiffs cannot maintain the claims for punitive damages under the Montreal Convention that they currently claim under statutory and common law. *See* Complaint, Prayer for Relief.

In short, all of Plaintiffs' allegations fall within the scope of the Montreal Convention, and Plaintiffs are unable to state any viable claims for relief under the Convention.

### C. Nearly All of Plaintiffs' Claims Based on State Law Are Also Preempted by the Airline Deregulation Act

In addition to preemption under the Montreal Convention, nearly all of Plaintiffs' state law claims are also preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713(b).

#### 1. The Airline Deregulation Act

Congress enacted the ADA to increase market competition in the airline industry, "determining that 'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices' as well as 'variety [and] quality . . . of air transportation services.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992) (quoting 49 U.S.C. §§ 40101(a)(6), 40101(a)(12), formerly 49 U.S.C. App. §§ 1302(a)(4), 1302(a)(9)).

The ADA contains an express preemption provision "[t]o ensure that the States would not undo federal deregulation with regulation of their own." *Morales*, 504 U.S. at 378. The provision provides, "A State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). Thus, a claim seeking to enforce state law that is "related to" the "price, route, or service of an air carrier" is expressly preempted by the ADA.

Preemption under the ADA is broad. The Supreme Court has explained that "related to" "express[es] a broad pre-emptive purpose" and therefore "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted under [the ADA]." *See Morales*, 504 U.S. at 383-84 (ADA preempts state attorneys general association's airline fare advertising guidelines); *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218 (2d Cir. 2008) (acknowledging and adopting a broad interpretation of ADA preemption). ADA preemption extends to common law actions. *See Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422,

1429-30 (2014) (rejecting the argument that ADA preemption only applies to state statutes and regulations and holding that preemption extends to common law claims); *Weiss v. El Al Israel Airlines*, 309 Fed. Appx. 483, 484-85 (2d Cir. 2009) (citing *Morales*, 504 U.S. at 386, for the proposition that "common-law tort suits can be preempted by the ADA"). Actions that are "seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings," *see American Airlines v. Wolens*, 513 U.S. 219, 220 (1995), or that affect the air carrier "in too tenuous, remote, or peripheral a manner," *see Morales*, 504 U.S. at 390 (citation omitted), are not preempted. The preemption provision applies to foreign carriers. *See In re Air Cargo Shipping Services Antitrust Litig.*, 697 F.3d 154, 164 (2d Cir. 2012) ("air carrier" in § 41713(b)(1) applies to foreign air carriers).

"Service" within the ADA preemption provision is defined as the provision of labor from the airline to its passengers and encompasses matters "incidental to and distinct from the actual transportation of passengers." *See Cuomo*, 520 F.3d at 223 (rejecting a narrower definition of "service" adopted by the Third and Ninth Circuits). Service includes "boarding procedures," *see, e.g., id.; Koutsouradis v. Delta Air Lines, Inc.*, 427 F.3d 1339, 1343-44 (11th Cir. 2005), decisions to refuse to transport passengers, *see, e.g.*, *Ruta v. Delta Airlines, Inc.*, 322 F. Supp. 2d 391, 400 (S.D.N.Y 2004), and "passenger handling and courteousness," *see, e.g., id.* at 401.

**2. Preemption of Plaintiffs' State Law Claims under the ADA**

Plaintiffs' state law claims sounding in tort are preempted by the ADA because they relate to the service of an air carrier – namely, passenger boarding and handling procedures. *See, e.g.*, *Northwest, Inc.*, 134 S. Ct. at 1433 (ADA preempts plaintiff's claim for breach of the implied covenant of good faith and fair dealing); *Abdel-Karim v. Egypt Air Airlines*, 116 F. Supp. 3d 389, 406 (S.D.N.Y. 2015) (ADA preempts common law claims for misrepresentation,

negligence, and intentional and negligent infliction of emotional distress); *Reed v. Delta Airlines, Inc.*, No. 10 Civ. 1053(JGK), 2011 WL 1085338, at *4 (S.D.N.Y. Mar. 23, 2011) (ADA preempts claims for negligence and gross negligence arising from defendant airline's refusal to let plaintiff board); *Galbut v. Am. Airlines, Inc.*, 27 F. Supp. 2d 146, 152-53 (E.D.N.Y. 1997) (ADA preempts plaintiff's slander per se claim, based on an airline employee allegedly stating during the boarding process that plaintiff had stolen an upgraded ticket); *Chukwu v. Bd. of Dirs. British Airways*, 889 F. Supp. 12, 13-14 (D. Mass. 1995) (ADA preempts slander claim against airline, which arose from an incident that occurred during the boarding process and thus related to a "service"); *Von Anhalt v. Delta Air Lines, Inc.*, 735 F. Supp. 1030, 1031 (S.D. Fla. 1990) (ADA preempts passenger's defamation claim arising from an incident on board the aircraft when passenger allegedly refused to allow a flight attendant to stow her carry-on baggage and was then ejected from the flight; claim "related to the services of aircrafts and the safety of passengers"); *Smith v. Comair, Inc.*, 134 F.3d 254, 258-59 (4th Cir. 1998) ("If passengers could challenge airlines' boarding procedures . . . alleging failure to transport, we would allow the fifty states to regulate an area of unique federal concern – airlines' boarding practices.").[9]

Therefore, in addition to preemption under the Montreal Convention, Plaintiffs' state law claims for intentional misrepresentation, negligence, libel, slander, malicious prosecution, discrimination, elder abuse, violation of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and negligent infliction of emotional distress are also preempted by the ADA.

---

[9] *See also Koutsouradis*, 427 F.3d at 1344 n.2 (affirming lower court's finding of ADA preemption and observing that "passenger handling and courteousness relate to the heart of services that an airline provides. These services are inherent when you board an airplane.").

## IV. CONCLUSION

For the reasons explained above, Plaintiffs have not stated and cannot state actionable claims against TAP in this case. All of Plaintiffs' claims are preempted by the Montreal Convention, and Plaintiffs do not state a viable cause of action under that Convention. Moreover, Plaintiffs' state law claims sounding in tort are also preempted by the ADA.

TAP respectfully requests that its Motion to Dismiss be granted in its entirety, and Plaintiffs' Complaint against TAP be dismissed with prejudice.

DEFENDANT,
TAP PORTUGAL

By: /s/ *Brian J. Wheelin*
Brian J. Wheelin, Esq. (ct26823)
ROBINSON & COLE LLP
1055 Washington Blvd.
Stamford, CT 06901-2249
Tel. No.: (203) 462-7500
Fax No.: (203) 462-7599
Email: bwheelin@rc.com

Carol Gosain, Esq.
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
Tel. No.: (202) 429-6461
Fax No.: (202) 261-0614
Email: cgosain@steptoe.com
*Admitted Pro Hac Vice*

William Karas, Esq.
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
Tel. No.: (202) 429-6223
Fax No.: (202) 429-3902
Email: wkaras@steptoe.com
*Admitted Pro Hac Vice*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and it shall be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Brian J. Wheelin*