UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| |  |
|---|---|
| ESTER SANCHES-NAEK, RASHID HAMID, and ABDUL NAEK HAMID,<br>    Plaintiffs,<br><br>v.<br><br>TAP PORTUGAL, INCORPORATED,<br>    Defendant. | No. 16-cv-1843 (VAB) |

### ORDER ON MOTION TO DISMISS

Ester Sanches-Naek, her husband Rashid Hamid, and their minor son Abdul Naek Hamid ("Plaintiffs"), bring this action against TAP Portugal, Inc. ("TAP") ("Defendant"), alleging various claims under the laws of Connecticut and under 28 U.S.C. §§ 1981 and 1983. ECF No. 1. Plaintiffs' claims arise from an alleged incident that occurred after they boarded an international TAP flight at John F. Kennedy International Airport. Compl. ¶ 4, ECF No. 1.

Defendant now moves to dismiss Plaintiffs' Complaint in its entirety, arguing that the Complaint is precluded by the Montreal Convention and by the Airline Deregulation Act ("ADA"), 29 U.S.C. § 41714(b). ECF No. 20. Oral argument on this motion was held on April 27, 2017. ECF No. 32. For the reasons that follow, the Court **GRANTS** Defendant's motion to dismiss with prejudice.

### I.   FACTUAL ALLEGATIONS

On or around July 28, 2016, Plaintiffs booked three round trip tickets with TAP. Compl. ¶ 4. Plaintiffs' first flight, TAP Flight 208, was scheduled to depart from John F. Kennedy International Airport ("JFK") to Lisbon, Portugal on August 3, 2016 at 11:30 PM. *Id.* Plaintiffs' itinerary allegedly included a connecting flight from Lisbon to Casablanca, Morocco and then a

1

returning flight from Porto, Portugal to Lisbon and one from Lisbon to JFK. *Id.* Plaintiffs allege that they had also prepaid for multiple hotel reservations and for ground transportation to and from each airport, each hotel, and each destination they planned to visit. *Id.* Mr. Hamid and Mr. Naek Hamid were flying first class. *Id.* ¶ 6. Ms. Sanches-Naek was flying in economy class. *Id.* ¶ 8.

Before boarding, Plaintiffs were allegedly granted access to TAP's VIP Lounge in the airport terminal and Ms. Sanches-Naek and Mr. Hamid each allegedly received one complimentary wine beverage in the VIP Lounge. *Id.* ¶¶ 6-7. Plaintiffs allege that they did not consume any other alcoholic beverages before boarding their flight and that none of them were intoxicated. *Id.* ¶ 7.

Plaintiffs allege that they boarded TAP Flight 208 together. *Id.* ¶ 8. Ms. Sanches-Naek allegedly proceeded to her assigned seat in economy class, seat 8D, which was in the first row of the economy class section of the plane, only one row away from the first class section of the plane. *Id.* ¶ 9. Mr. Hamid, her husband, and Mr. Naek Hamid, their minor son, proceeded to their seats in the business class or first class section, seats 2A and 2D. *Id.* ¶ 8.

After Ms. Sanches-Naek placed her carry-on item in the overhead compartment, she alleges that she realized that she was carrying her husband and son's boarding passes and passports. *Id.* ¶ 9. She allegedly realized that they might need these documents immediately. *Id.* She allegedly proceeded towards the front of the plane and the first class section in order to return her husband and son's travel documents and to assist them with placing their carry-on baggage in the overhead compartments. *Id.*

Plaintiffs allege that, as Ms. Sanches-Naek approached her husband and son's seats, she observed a male TAP flight attendant "rudely and loudly berating and screaming" at them. *Id.* ¶

10. When Ms. Sanches-Naek allegedly tried to "ascertain why the male flight attendant was screaming at her elderly husband and minor child and before she could explain why she was in First Class," the flight attendant allegedly began screaming at her as well, "ordering her to return back to the Economy Class section of the airplane and call[ing] Global Security." *Id.* When the Global Security officer arrived, he allegedly advised Plaintiffs to leave the plane, which they did. *Id.* ¶ 11.

After Plaintiffs left TAP Flight 208, and while they waited in the airport terminal to retrieve their luggage, TAP allegedly also summoned the Port Authority Police Department ("PAPD") and five PAPD officers allegedly arrived at the terminal. *Id.* ¶ 11. The PAPD officers allegedly determined that TAP had misinformed them of the nature of the incident and "that there was no legitimate reason for [TAP] to have summoned the police." *Id.*

Plaintiffs allege that this incident resulted in them missing TAP Flight 208, their flight to Lisbon. *Id.* ¶ 12. This allegedly resulted in Plaintiffs missing all of their subsequent flights and therefore "completely ruined" their vacation. *Id.*

## II.  STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 158 (2d Cir. 2003) (internal citations omitted). When deciding a Rule 12(b)(6) motion to dismiss, a court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79

(2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion [s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555-57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

### III. DISCUSSION

Plaintiffs bring various claims under Connecticut state law, including for "intentional misrepresentation", "negligence", "libel" and "defamation of character", "slander", "malicious prosecution," "elder abuse", "breach of contract", "violation of the implied covenant of good faith and fair dealing", "intentional infliction of emotional distress", and "negligent infliction of emotional distress." Compl. ¶¶ 13-63. Plaintiffs also bring claims under 28 U.S.C. §§ 1981 and 1983, alleging "discriminatory practices and treatment." *Id.* ¶¶ 37-45. Defendants move to dismiss Plaintiffs' Complaint in its entirety, arguing that all of Plaintiffs' claims are precluded by the Montreal Convention and the ADA. *See generally* Def.'s Br., ECF No. 20-1.

### A. The Warsaw Convention and the Montreal Convention

The Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929 ("Warsaw Convention") was "crafted during the Second International Conference on Private Aeronautical Law of 1929 in order to foster the growth of the nascent commercial airline industry." *King v. Am. Airlines, Inc.*, 284 F.3d 352, 356 (2d Cir. 2002). "The cardinal purpose of the Warsaw Convention . . . is to achieve uniformity of rules governing claims arising from international air transportation." *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 169 (1999) (internal quotation marks omitted). The Warsaw Convention "created a comprehensive liability system to serve as the exclusive mechanism for remedying injuries suffered in the course of the 'international transportation of persons, baggage, or goods performed by aircraft.'" *King*, 284 F.3d at 356-57 (quoting Warsaw Convention, Art. I, 49 Stat 3000 (Oct. 29, 1934)). "This remedial system is designed to protect air carriers against catastrophic, crippling liability by establishing monetary caps on awards and restricting the types of claims that may be brought against carriers, while accommodating the interests of injured passengers by creating a presumption of liability against the carrier when a claim satisfies the substantive requirements of the Convention." *Id.* at 357 (citing *Tseng*, 525 U.S. at 169-70).

The Warsaw Convention "precludes a passenger from maintaining an action for personal injury damages under local law when her claim does not satisfy the conditions for liability under the [Warsaw] Convention." *Tseng*, 525 U.S. at 176. As the Second Circuit has noted, "the Supreme Court in *Tseng* held that the Convention's preemptive effect on local law extends to all causes of action for injuries to persons or baggage suffered in the course of international airline transportation, regardless of whether a claim actually could be maintained under the provisions of the Convention." *King*, 284 F.3d at 357.

5

"[T]he need to modernize and consolidate the Warsaw Convention and related instruments," Montreal Convention, Preamble, Gosain Aff. Ex. A, ECF No. 20-3, led to the drafting of the Convention for the Unification of Certain Rules Relating to International Carriage by Air, May 28, 1999 ("Montreal Convention"). "[T]he Montreal Convention is an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention." *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n. 4 (2d Cir. 2004). Like the Warsaw Convention, the Montreal Convention governs "all international carriage of persons, baggage or cargo performed by aircraft for reward." Montreal Convention, Art. 1.1; *see also* Montreal Convention, Art. 29 ("In the carriage of passengers . . . any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention.").

The Montreal Convention "still retains many of [the] original provisions and terms" of the Warsaw Convention, "and thus courts have continued to rely on cases interpreting equivalent provisions in the Warsaw Convention." *Hunter v. Deutsche Lufthansa AG*, 863 F. Supp. 2d 190, 205 (E.D.N.Y. 2012). Both treaties have the same preemptive effect on personal injury actions under the local laws of signatory countries. *See Paradis v. Ghana Airways Ltd.*, 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004), *aff'd*, 194 F. App'x 5 (2d Cir. 2006) ("Here, the preemptive effect is identical regardless of whether the Montreal Convention or the Warsaw Convention . . . applies; thus, the Court need not decide which Convention controls."). Under the scheme provided for by the Warsaw Convention and Montreal Convention (collectively, the "Conventions"), passengers are "denied access to the profusion of remedies that may exist under the laws of a particular country, so that they must bring their claims under the terms of the Convention or not at all." *King*, 284 F.3d at 35.

At oral argument, Plaintiffs maintained that the Supreme Court's holding in *Tseng*, which precludes passengers on international flights from maintaining actions for "personal injury damages" if such actions may not be brought under the Conventions, does not apply to their claims. *Tseng*, 525 U.S. at 176. In support of this argument, Plaintiffs argued that they seek only economic damages, i.e. compensation for their prepaid trip expenses, rather than damages arising from physical injury, which Plaintiffs do not allege.

This interpretation of *Tseng*, however, is not supported by that decision's language. *See Tseng*, 525 U.S. at 171 (rejecting lower court's interpretation of the Warsaw Convention "to allow passengers to pursue claims under local law when the Convention does not permit recovery" because such an interpretation would "encourage artful pleading by plaintiffs seeking to opt out of the Convention's liability scheme when local law promised recovery in excess of that prescribed by the treaty" and undermine "the predictability that adherence to the treaty has achieved worldwide"). Plaintiffs' position is also inconsistent with the Second Circuit's interpretation of the Conventions' preclusive effect. *See King*, 284 F.3d at 356-57 ("[T]he Warsaw Convention created a comprehensive liability system to serve as the exclusive mechanism for remedying injuries suffered in the course of the international transportation of persons . . . performed by aircraft.").

These cases and related decisions make clear that "all state law claims allegedly arising from a damaging event covered by the [Warsaw Convention], as well as all subsequent tortious conduct which cannot be artificially separated from the precipitating cause, are preempted by the [Warsaw Convention]." *Yanovskiy v. Air France*, 173 F.3d 848 (2d Cir. 1999) (unpublished table opinion). Thus, regardless of the type of damages that Plaintiffs are seeking, all of their state law claims, including their claims for "intentional misrepresentation", "negligence", "libel"

7

and "defamation of character", "slander", "malicious prosecution," "elder abuse", "breach of contract", "violation of the implied covenant of good faith and fair dealing", "intentional infliction of emotional distress", and "negligent infliction of emotional distress," Compl. ¶¶ 13-63, are precluded by the Montreal Convention because, as explained below, all of their state law claims arise from one "damaging event covered by the" Montreal Convention. *Yanovskiy*, 183 F.3d at 848.

As for Plaintiffs' discrimination claims under 28 U.S.C. § 1981 ("Section 1981") and 28 U.S.C. § 1983 ("Section 1983")[1], such claims are also preempted by the Montreal Convention. The Second Circuit has held that federal civil rights and discrimination claims, such as those brought under Section 1981 or Section 1983, are precluded by the Montreal Convention if they arise from acts that fall under the Montreal Convention's substantive scope. *See King*, 284 F.3d at 362 ("[Plaintiffs] suggest that, despite Article 24's plain mandate that the Warsaw Convention preempts 'any cause of action, however founded,' we should nonetheless carve out an exception for civil rights actions as a matter of policy. This we decline to do.") (discussing Section 1981 claims); *Dogbe v. Delta Air Lines, Inc.*, 969 F. Supp. 2d 261, 274-75 (E.D.N.Y. 2013) (finding that plaintiff's Section 1983 claims in connection with altercations with flight attendants and ground crew while he was on board plane for international flight were "preempted by the

---

[1] Even if the Montreal Convention did not preclude such claims, Section 1983 claims also cannot be brought against TAP because, as an airline, TAP is not a state actor. Section 1983 does not provide a remedy with respect to "merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (internal quotation marks omitted). To state a Section 1983 claim, the Complaint must indicate that the relevant action causing the constitutional deprivation was "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936-37 (1982). Thus, Plaintiffs' Section 1983 claim must be dismissed because they have not plausibly alleged that TAP acted under color of state law. *See Dogbe v. Delta Air Lines, Inc.*, 969 F. Supp. 2d 261, 274-75 (E.D.N.Y. 2013) ("[P]laintiff does not allege, and cannot in good faith allege, that [fight attendant defendant's] conduct was undertaken under the color of state law. Thus, plaintiff's Section 1983 claim must be dismissed." (internal citations omitted)); *Puckett v. Nw. Airlines, Inc.*, 131 F. Supp. 2d 379, 382 (E.D.N.Y. 2001) (finding that where plaintiffs brought Section 1983 claim against defendant airline for failing to board them allegedly because airline could not accommodate one plaintiff's disability the "complaint lacks any allegation of state action, compelling the dismissal of" the Section 1983 claims).

8

[Warsaw and Montreal] Conventions"); *Kripalani v. AMR Corp.*, No. 12-CIV-5609 (KBF), 2013 WL 1822777, at *2 (S.D.N.Y. Apr. 30, 2013) (holding that all of plaintiff's claims including Section 1981 claims arising from alleged harassment by flight attendant while on international flight were preempted by Montreal Convention).

### B. The Substantive Scope of the Montreal Convention

The Montreal Convention's "preemptive effect on local law" extends as far as "the Convention's own substantive scope." *Tseng*, 525 U.S. at 158 (discussing case under Warsaw Convention). The substantive scope of Article 17 of the Montreal Convention encompasses events that "took place on board the aircraft or in the course of any of the operations of embarking or disembarking," Montreal Convention, Art. 17.1, and allows for airlines to be held liable only when an accident has "caused a passenger to suffer death, physical injury, or physical manifestation of injury." *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 552 (1991) (interpreting Warsaw Convention); *see also* Montreal Convention, Art. 17.1 ("The carrier is liable for damage sustained in case of death or bodily injury of a passenger.").

Plaintiffs' claims clearly fall within the former, the substantive scope of the Montreal Convention, because they arise from an event taking place during the embarking of an airplane, but Plaintiffs' claims also cannot be brought under the latter, the terms of the Montreal Convention because they do not involve "death, physical injury or physical manifestation of injury." *Floyd*, 499 U.S. at 552. As discussed above, Plaintiffs' claims are therefore precluded by the Montreal Convention. Plaintiffs' remaining arguments to the contrary are unavailing.

#### 1. Plaintiffs' Claim Arise from An Event During the Embarking of An Airplane

"Article 17 directs [courts] to consider *when* and *where* an event takes place in evaluating whether a claim for an injury to a passenger is preempted" because it occurred on the aircraft or

9

in the course of operations of embarking or disembarking. *King,* 284 F.3d at 360 (emphasis in original). The Second Circuit "has adopted a flexible approach for determining whether a passenger is in the course of any of the operations of embarking when the injury allegedly occurred," considering "four factors: (1) the activity of the passengers at the time of the accident; (2) the restrictions, if any, on their movements; (3) the imminence of actual boarding; (4) the physical proximity of the passengers to the gate." *Id.* at 359 (internal quotation marks omitted).

Contrary to Plaintiffs' position, whether claims fall under the substantive scope of the Conventions does not depend on the nature of the claims, *see* Pl.'s Br. at 9-12, ECF No. 29 (arguing that "Montreal Convention does not preempt intentional tort claims under state law for non-bodily injuries"), but is dependent on "*when* and *where* an event takes place," *King* 284 F.3d at 370 (emphasis in original), i.e. whether the underlying events took place "on board the aircraft" or in the course of "operations of embarking or disembarking" an international flight. Montreal Convention, Art. 17.1.

In *King*, plaintiffs alleged that the defendant airline had discriminated against them on the basis of race when they were involuntarily bumped from their international flight after they "had already checked in for their flight, received their boarding passes, and boarded the vehicle that was to transport them from the terminal to the aircraft," and the Second Circuit found that the case fell under the substantive scope of Article 17 because it involved "events that took place during embarkation." *King,* 284 F.3d at 359. Similarly, the Second Circuit has also held that where the events underlying a claim took place after plaintiffs had "already surrendered their tickets, passed through passport control, and entered the area reserved exclusively for those about to depart on international flights" and "assembled at the departure gate, virtually ready to

proceed to the aircraft," the case was governed by Article 17. *Day v. Trans World Airlines, Inc.*, 528 F.2d 31, 33-34 (2d Cir. 1975) (discussing case under Warsaw Convention).

Courts in this Circuit have also found that malicious prosecution and negligent and intentional infliction of emotional distress claims, similar to those in this case, were precluded by the Montreal Convention where the plaintiff was in the process of embarkation because she was arrested at the gate for a connecting flight while she was in line to board and the flight had already begun boarding. *See Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 303 (E.D.N.Y. 2013), *aff'd*, 578 F. App'x 51 (2d Cir. 2014); *see also Matveychuk v. Deutsche Lufthansa, AG*, No. 08-CV-3108 (JG) (RML), 2010 WL 3540921, at *4 (E.D.N.Y. Sept. 7, 2010) (finding that claims arising while plaintiff was prevented from boarding her connecting flight at the gate in a German airport were governed by the Montreal Convention).

All of Plaintiffs' claims arise from a series of events that occurred while Plaintiffs were boarding TAP Flight 208. The parties do not dispute that TAP Flight 208, from JFK to Lisbon, Portugal, is an international flight. Plaintiffs admit that they had already "entered the airplane" and were proceeding to their seats when a TAP flight attendant allegedly "rudely and loudly berat[ed] and scream[ed]" at them." Compl. ¶¶ 8, 10. TAP allegedly also called Global Security, and the Global Security officer allegedly advised Plaintiffs to disembark from the airplane. *Id.* ¶ 11. TAP allegedly also called the PAPD, and five PAPD officers allegedly arrived in the terminal at JFK while Plaintiffs were retrieving their luggage. *Id.* The TAP flight attendant's alleged actions occurred while Plaintiffs were on board the aircraft. All of Plaintiffs' claims therefore fall under the substantive scope of Article 17 of the Montreal Convention as they "took place on board the aircraft" and "in the course . . . the operations of embarking." Montreal Convention, Art. 17.1.

In light of "*when* and *where*" the events alleged in the Complaint took place, Plaintiffs' claims are clearly in the substantive scope of the Montreal Convention. *King,* 284 F.3d at 360 (emphasis in original). The Second Circuit has clarified that even where a plaintiff passenger had yet to board the plane, but had already checked in, received their boarding passes, and were in the process of being transported from the terminal to the aircraft, the case is still governed by Article 17. *See id.* at 359; *see also Day*, 528 F.2d at 33-34 (holding that case involving events after plaintiffs had passed through passport control and were assembled at the departure gate was governed by Article 17). Here, Plaintiffs were even further along in the process of embarkation and had, in fact, stepped foot on the plane for their international flight. Malicious prosecution and negligent and intentional infliction of emotional distress claims arising in this context therefore are within the substantive scope governed by Article 17. *See Kruger*, 976 F. Supp. 2d at 303.

Plaintiffs argue that *Tseng* found that the Conventions did not preempt local law in cases alleging "willful misconduct," see Pl.'s Br. at 10, but the only such reasoning in *Tseng* is in Justice Stevens's dissent. *See Tseng*, 525 U.S. at 178 ("The Convention, however, does not preempt local law in cases arising out of 'wilful misconduct.' [sic] Article 25 expressly provides that a carrier shall not be entitled to avail itself of the provisions of the Convention that 'exclude or limit' its liability if its misconduct is willful.") (8-1 decision) (Stevens, J. dissenting).

Furthermore, Justice Stevens's dissent referred to a provision of the Warsaw Convention discussing willful misconduct that was not included in the Montreal Convention. *See Carey v. United Airlines*, 255 F.3d 1044, 1047 n. 11 (9th Cir. 2001) ("The 'willful misconduct' standard was later amended to the formulation 'intentionally or recklessly with knowledge that damage would probably result.'"). The relevant language is now in Article 22, which governs "Limits of

12

Liability in Relation to Delay, Baggage and Cargo" and provides that the Montreal Convention's damages caps as to "damage caused by delay", "destruction, loss, damage or delay" of passenger baggage or "destruction, loss, damage or delay" in shipment of cargo "shall not apply if it is proved that the damage resulted from an act or omission of the carrier, its servants or agents, done with intent to cause damage or recklessly and with knowledge that damage would probably result." *See* Montreal Convention Art. 22; *see also* Montreal Convention Art. 21.2 (discussing the damages cap of "100 000 Special Drawing Rights" that applies in actions brought under Article 17 "if the carrier proves that: (a) such damage was not due to the negligence or other wrongful act or omission of the carrier or its servants or agents").

Plaintiffs further argue that they are alleging "complete nonperformance" by TAP and that nonperformance claims are "clearly not covered under the Montreal Convention," Pl.'s Br. at 13, and maintain that "the majority of courts both nationally and in the [Second Circuit]" conclude that "[w]hether as a result of bumping or removal the complete nonperformance" is found to be "outside the realm of the Montreal Convention." *Id.* at 14. The cases relied upon by Plaintiffs are, however, inapposite.

Other courts have found nonperformance and the resulting inapplicability of the Conventions where passenger plaintiffs were involuntarily bumped and denied boarding at check-in. *See Wolgel v. Mexicana Airlines*, 821 F.2d 442, 445 (7th Cir. 1987) (finding that in case where plaintiffs "presented their tickets and baggage" to check in and were involuntarily bumped and "informed that no seats were available on their flight" that the claims were "for total nonperformance of a contract" and that "the Warsaw Convention [was] inapplicable"). Plaintiffs here, however, were not denied boarding, and were in fact, already on the plane when the TAP employee allegedly "berat[ed] and scream[ed]" at them and then allegedly called Global Security

13

and the PAPD and caused Plaintiffs' removal from the flight. Compl. ¶ 10. Furthermore, the Second Circuit has also found that, where involuntary bumping occurs within the substantive scope of the Conventions, i.e. in the course of embarkation, the Conventions will preclude plaintiff passengers' claims even if plaintiffs were unable to board and take their flight. *See King*, 284 F.3d at 358 ("[W]e hold that the events in question occurred in the course of embarkation, and that the Kings' action therefore falls within the substantive scope of Article 17.").

Courts in this Circuit have found that, where defendant airlines "ceased operations between Nigeria and the United States, effectively terminating the flight program" and leaving "hundreds of passengers who had purchased tickets for flights in" the following year "unable to travel" as well as stranding some passengers who had "flown the outbound legs of their round trips already," the plaintiff passengers' claims were not preempted by the Montreal Convention because the case involved nonperformance. *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 450, 456 (E.D.N.Y. 2007). This type of "refusal to fly passengers" due to the cancellation of an entire program of flights is, however, different from Plaintiffs' situation, where TAP allegedly caused their removal from the flight after Plaintiffs had checked in, received boarding passes, gotten through security, and even boarded the plane. *See* Compl. ¶¶ 6-10.

A case holding that passengers who had gotten past check in and security, but were then denied boarding and involuntarily bumped, brought a nonperformance claim not precluded by the Montreal Convention, rather than a claim for "delay" under Article 19 of the Montreal Convention, is also inapplicable. *See Weiss v. El Al Israel Airlines, Ltd.*, 433 F. Supp. 2d 361, 369 (S.D.N.Y. 2006), *aff'd*, 309 F. App'x 483 (2d Cir. 2009) ("[P]laintiffs' bumping claims

14

should be read as grounded in a cause of action for non-performance of contract and not delay. They are, therefore, not preempted by the Montreal Convention."). Here, there is no allegation that Plaintiffs were bumped by TAP and, in any case, the Plaintiffs had not been denied boarding and were even on the plane. Other nonperformance cases from district courts in the Second Circuit that Plaintiffs cite are also inapplicable because they do not involve passenger flights. *See Seagate Logistics, Inc. v. Angel Kiss, Inc.*, 699 F. Supp. 2d 499, 506 (E.D.N.Y. 2010) (discussing nonperformance in the context of a shipping contract and not a passenger flight); *Certain Underwriters at Lloyd's London v. Art Crating, Inc.*, No. 12-CV-5078 (NGG) (VMS), 2013 U.S. Dist. LEXIS 183306, at *31 (E.D.N.Y. Dec. 16, 2013) (finding nonperformance in the context of the shipment of cargo).

### 2. Plaintiffs' Claim Does Not Involve a Physical Injury

Because the Warsaw Convention and Montreal Convention create a "comprehensive liability system" that is the "exclusive mechanism for remedying injuries" that are covered by the substantive scope of the two Conventions, they preclude any claims that arise from events covered by the Conventions' substantive scope but that are not brought under the Conventions, including suits alleging racial discrimination. *King*, 284 F.3d at 356-57, 360-62 (holding that plaintiffs' suit alleging racial discrimination against defendant airlinethat bumped them involuntarily from international flight was precluded because it could not be brought under Article 17 of the Warsaw Convention). The Supreme Court has therefore held that, "recovery for a personal injury suffered on board an aircraft or in the course of any of the operations of embarking or disembarking, if not allowed under the Convention, is not available at all." *Tseng*, 525 U.S. at 161.

Article 17 of the Montreal Convention allows airlines to be held "liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury" took place within the substantive scope of Article 17 described above. Montreal Convention, Art. 17.1. "[A]n air carrier cannot be held liable under Article 17 when an accident has not caused a passenger to suffer death, physical injury, or physical manifestation of injury." *Floyd*, 499 U.S. at 552 (interpreting Warsaw Convention). Accordingly, the Second Circuit has concluded that "Article 17 allows passengers to bring a Warsaw Convention action against air carriers to recover for their mental injuries but only to the extent that they flow from bodily injuries." *Ehrlich*, 360 F.3d at 374-75.

Plaintiffs do not allege that Defendant's actions caused them to experience any kind of physical or bodily injuries. Instead, they allege only that a TAP flight attendant berated and yelled at them and that TAP called Global Security and the PAPD. See Compl. ¶¶ 8, 10-11. No TAP employee, Global Security officer, or PAPD officer is alleged to have physically harmed any of the Plaintiffs in any way, much less made physical contact with any of the Plaintiffs. Any injury that Plaintiffs allegedly suffered is therefore purely psychological, rather than related to physical injuries.

Plaintiffs, in fact, conceded in their brief and at oral argument that their claims cannot be brought under Article 17. *See also* Pl.'s Br. at 6 ("All of Plaintiffs' claims in this case are outside the scope of Article 17 in that they do not include claims for bodily injury arising from an accident."). Thus, Plaintiffs will not be able to bring any of their claims against TAP under the Montreal convention. *See Ehrlich*, 360 F.3d at 374-75 (holding that the Article 17 only allows suit for "mental injuries . . . only to the extent that they flow from bodily injuries"). Because the Montreal Convention does not allow Plaintiffs to raise any of the claims in their

Complaint, Plaintiffs' claims under Connecticut law and United States federal law are precluded in their entirety by the Montreal Convention. *Tseng*, 525 U.S. at 176 ("For the reasons stated, we hold that the Warsaw Convention precludes a passenger from maintaining an action for personal injury damages under local law when her claim does not satisfy the conditions for liability under the Convention.").

### C. Airline Deregulation Act

TAP also argues that Plaintiffs' claims are precluded by the Airline Deregulation Act, or ADA. *See* Def.'s Br. at 13-14. Because, as explained above, the Court finds that Plaintiffs' claims are governed by and precluded by Article 17 of the Montreal Convention, the Court need not reach the issue of whether Plaintiffs' claims are also precluded by the ADA.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion to dismiss with prejudice because Plaintiffs' claims are precluded by the Montreal Convention.

Consistent with the analysis above, the Court finds that, even if given the opportunity to amend the complaint, Plaintiffs will not be able to allege facts showing that they can state a claim that is not precluded by the Montreal Convention. Thus, dismissal with prejudice is appropriate. *See Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 368 (2d Cir. 2014) ("Finally, Plaintiffs contend that the district court abused its discretion in dismissing their claims with prejudice. We disagree. Plaintiffs have identified no facts that, if alleged, would establish a valid claim. The district court therefore did not abuse its discretion because any amendment . . . would be futile." (internal citations omitted)).

The Clerk of the Court is directed to enter judgment in favor of the Defendants and to close this case.

SO ORDERED at Bridgeport, Connecticut, this 2nd day of May, 2017.

      /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge